UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN WARMAN,

                Plaintiff,                Case Number 05-10138
v.                                                Honorable David M. Lawson
                                                     Magistrate Judge Charles Binder
H.J. MARBERRY, T.K. COZZA-RHODES,
W. MALATINSKY, TIMOTHY HALL,
and JURCZAK,

                Defendants.
_____/

## OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DISMISSING CASE

This matter is before the Court on the plaintiff's objections to a report filed by Magistrate Judge Charles E. Binder recommending *sua sponte* dismissal for failure to state a claim upon which relief can be granted. The plaintiff is a federal prisoner who filed a *pro se* complaint alleging that prison officials were deliberately indifferent to his medical needs, manifested in the way they treated his obstructive sleep apnea and hepatitis C aliments. The case was referred to Judge Binder to conduct all pretrial proceedings under 28 U.S.C. § 636(b)(1)(B). Judge Binder conducted the screening required by 28 U.S.C. § 1915A, and on October 18, 2007, he filed a report recommending that the case be dismissed with prejudice. The plaintiff filed objections after the Court extended his deadline for doing so. The Court has reviewed the file, the report and recommendation, and the plaintiff's objections and has made a *de novo* review of the record. The Court concludes that the plaintiff's objections lack merit, and the complaint fails to state a claim for relief. Therefore, the Court will adopt the recommendation and dismiss the case.

I.

Plaintiff Steven Warman commenced this *pro se* action on May 18, 2005. He currently is confined at FCI Morgantown in West Virginia, but the incidents complained of took place at the Federal Detention Center (FDC) in Milan, Michigan while Warman was both a pretrial detainee and later an inmate there awaiting transfer to another federal facility. The named defendants are all personnel at FDC Milan and include Warden H.J. Marberry, Detention Center Administrator T.K. Cozza-Rhodes, Doctor W. Malatinsky, Counselor Timothy Hall, and Case Manager Jurczak. In his complaint, the plaintiff claims that he suffers from sleep apnea and has been medically prescribed the use of a continuous positive pressure (CPAP) machine to facilitate his breathing during sleep. He alleges that housing him with a cell mate seriously endangers his health due to the risk of a cell mate inadvertently or intentionally unplugging the machine or otherwise causing it to malfunction. In support, he lists several incidents in which the CPAP machine was damaged or unplugged as a result of his placement with other prisoners. He states that the mask was "rendered inoperable" by a cell mate and that he was forced to "endure days of a defective critical care device . . . while awaiting a replacement of severed components whenever provided by medical staff." Am. Compl. at ¶ 29a. He claims that the machine has been inadvertently unplugged by cell mates getting up to use the bathroom at night and that cell mates have knocked items from the top bunk that have fallen on the machine, causing it to shut off or malfunction. He also cites an incident where a cell mate fell from the top bunk and knocked the machine on the ground, another incident where a cell mate inadvertently unplugged the machine after opening his locker, and occasions when orderlies have unplugged the machine in order to buff the floors.

The plaintiff contends that if the machine shuts off while he is asleep it will actually hinder his breathing by covering his face, and that he has awoken several times struggling to breathe after

this had occurred. He alleges this "could cause a swelling of the heart, leading to cardiac arrest or explosion." Am. Compl. at ¶ 32. He also cites an incident that occurred on March 15, 2005:

> I awoke this morning sufficating from the "lack of Oxygen" since my cpap was not in operation. I felt very ill, weak, left arm numb and left side of my face. I was dizzy and light headed with sever chest pains. . . . I went outside the cell and the extension cord was still plugged into the outlet, however, the circuit was blown. I reset and returned to the cell . . . . At this time [Walton, the plaintiff's cell mate at the time,] was trying to force the cord shut in the door-jam.

Pl.'s Aff. at ¶ 24 (mistakes in original).

Warman says that his chest pains continued and that he signed up for sick call on March 17, 2005, but was not actually seen by the physician assistant (P.A). until March 31, 2005. On that date, the P.A. took his blood pressure, oxygen level, temperature, and weight. The plaintiff asked for a stress test, CAT-scan, MRI, and X-ray, none of which were performed. The next day, after the P.A. had taken him for blood-sugar testing (the plaintiff also suffers from diabetes), his cell mate stepped on the CPAP air mask, breaking it. The plaintiff states that he has not received replacement parts for the broken mask and that he has put it together with paper clips, rubber bands, and Saran Wrap.

The plaintiff alleges that he brought these incidents to the attention of counselor Citchen, who was at first responsive and transferred cell mates to other cells. He alleges that defendant Cozza-Rhodes refused one of his requests. On February 28, 2005, he filed an Administrative Remedy Informal Resolution (ARIR) grievance setting forth his complaint and requesting classification as a single-cell inmate. He filed a Request for an Administrative Remedy (BP-229) on March 7, and another ARIR on March 10. On March 16, defendant Marberry responded and denied his request. She noted that although he was presently housed alone, since medical staff had determined that inadvertent disconnection of the machine did not pose an immediate risk to his life or health, there was no reason he should not be placed with another inmate in the event that bed

space was not available. The plaintiff filed an appeal on March 22, arguing that non-use of the CPAP machine did in fact pose a serious risk to his health, as it decreased the amount of oxygen in the blood, causing the heart to strain to pump the blood through the body, in turn causing "ballooning of the heart," which could result in a heart attack. Defendant Marberry responded on April 5, reiterating that the plaintiff's request had been denied. The plaintiff also alleges several instances where various cell mates notified the defendants of the problems associated with housing them with the CPAP machine.

The plaintiff also suffers from hepatitis C and claims that the condition has worsened as a result of the defendants' insistence that he await arrival at his designated detention facility before obtaining treatment. He claims that his condition "has worsened significantly . . . in that [his] enzymes are now high, indicating damage to the Liver . . . for lack of treatment, thus also triggering [his] blood pressure to rise as evidenced by an increase in blood medication dosage." Am. Compl. at ¶¶ 37-39.

Following the reference, Judge Binder recommended *sua sponte* dismissal without prejudice because the plaintiff had failed to demonstrate he had exhausted administrative remedies as required by the Prison Litigation Reform Act (PLRA). The intervening decision of *Jones v. Bock*, 549 U.S. 199 (2007), holding that the PLRA's exhaustion requirement is an affirmative defense that need not be addressed in the plaintiff's complaint, caused the Court to reject the report and recommendation and referred the matter back to Magistrate Judge Binder for further case management.

Thereafter, Judge Binder filed the present report finding that the plaintiff failed to allege a medical condition that was objectively serious in the instance of both sleep apnea and hepatitis C, so the plaintiff had failed to state a claim for each.

The plaintiff filed objections focusing primarily on Judge Binder's finding that, "[a]lthough plaintiff has averred that he could potentially suffer severe consequences if his breathing apparatus were to fail (Dkt. 6 at ¶ 32), he has not averred that this has ever happened." Pl.'s Obj. at ¶ A (quoting R & R [dkt # 12] at 7). In support of his objection, the plaintiff refers back to the incidents listed in his original complaint where the CPAP machine was unplugged or otherwise rendered inoperable. He refers to his affidavit, in which he stated, "[w]ith reckless cellmates inflicting a life-threatening situation, . . . I have awakened many times from the 'lack of oxygen' trying to breath through a breathing machine's mask which has a great restriction of air flow." *Id.* at ¶ A1 (quoting Pl.'s Aff. at ¶ 9). He also refers to the incident he alleges occurred on March 15, 2005, stating:

> "I awoke this morning suffocating from the "lack of oxygen" since my cpap machine was not in operation. I felt very ill, weak, left arm numb and left side of my face. I was dizzy and light headed with chest pains . . . I went outside the cell and the circuit was blown on the extension cord."

*Id.* at ¶ A6 (quoting Pl.'s Aff. at ¶ 24). He also avers:

> Dangers in the night (darkness) within the secured cell with respect to unplugging the extension cord, [d]islodging breathing hose, tripping, falling and over all creating an[] unsafe living environment . . . to this on-going course of events, which have caused me to suffer irreversible physical injury(s) and great mental suffering.

*Id*. at ¶ A3 (mistakes in original) (internal quotation marks omitted). The plaintiff contends that these allegations are sufficiently serious to satisfy the objective component of a deliberate indifference claim.

The plaintiff also objects to the magistrate judge's finding that "'he suffered no actual consequences when his breathing apparatus was broken by his cellmate and he had to wait for replacement parts.'" *Id*. at 6 (quoting R & R at 7). However, in support of this, the plaintiff merely

re-states that he did not receive replacement parts for the face mask for over one year. He does not allege any actual damage to his health resulting from this delay.

He also addresses the subjective element of his claim, stating that he "made prison officials aware of the life threatening consequences of [s]leep [a]pnea within his grievances to the BOP." *Id.* at 4. In support, he refers to the BP-229 submitted March 7, 2005 and an article discussing deaths resulting from sleep apnea.

Lastly, the plaintiff addresses Judge Binder's finding regarding his hepatitis C claim. He refers to a correspondence from Senator Carl Levin and appears to accuse the defendants of lying in their response to the Senator and thus violating 18 U.S.C. § 1001. It appears that the plaintiff wrote a letter to Senator Levin complaining that he did not receive treatment for his hepatitis C at FDC Milan. The Senator in turn wrote to the defendants, who responded that the plaintiff was not being treated due to his pretrial status and would be treated upon arrival at his designated parent institution. The plaintiff apparently misunderstood their response, asserting that it was a false statement because he "was not even convicted of a violation of federal law." Pl.'s Obj. at 10. It seems that his argument in support of his objection to the finding regarding his hepatitis C claim is that the defendants' statement to Senator Levin amounted to deliberate indifference because it was false and thus a "federal violation[] of law." *Id.* at 11. He also states that, as of June 1, 2006, a liver biopsy showed that he did in fact have liver disease but that defendant Malatinsky told him he could not receive treatment because he did not have cirrhosis damage. This apparently is consistent with the BOP's policy. He also claims that a doctor at Ashland Camp in Kentucky, where he was at some point transferred, informed him that he would suffer kidney failure within the next five years. He

claims this is a result of his hepatitis C but does not make any connection to his lack of treatment during pre-trial detention.

II.

Objections to a report and recommendation are reviewed *de novo*. 28 U.S.C. § 636(b)(1). The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir.1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

A complaint is subject to dismissal under Rule 12(b) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When applying that Rule, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Ibid.* Federal Rule of Civil Procedure 8(a) requires that the complaint give the defendant fair notice of the nature of the claim and the factual grounds

upon which it rests. *Twombly*, 127 S.Ct. at 1964. Therefore, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citations omitted) (alteration in original). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (1984)); *see also Ana Leon T. v. Fed. Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987) (per curiam) (mere conclusions are not afforded liberal Rule 12(b)(6) review). However, "'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The plaintiff alleges that his sleep apnea condition is life-threatening if he must go without his breathing machine at night. According to the American Sleep Apnea Association,

> The Greek word "apnea" literally means "without breath." There are three types of apnea: obstructive, central, and mixed; of the three, obstructive is the most common. Despite the difference in the root cause of each type, in all three, people with untreated sleep apnea stop breathing repeatedly during their sleep, sometimes hundreds of times during the night and often for a minute or longer.
>
> Obstructive sleep apnea (OSA) is caused by a blockage of the airway, usually when the soft tissue in the rear of the throat collapses and closes during sleep. In central sleep apnea, the airway is not blocked but the brain fails to signal the muscles to breathe. Mixed apnea, as the name implies, is a combination of the two. With each apnea event, the brain briefly arouses people with sleep apnea in order for them to resume breathing, but consequently sleep is extremely fragmented and of poor quality.
>
> Sleep apnea is very common, as common as adult diabetes, and affects more than twelve million Americans, according to the National Institutes of Health. Risk

> factors include being male, overweight, and over the age of forty, but sleep apnea can strike anyone at any age, even children. Yet still because of the lack of awareness by the public and healthcare professionals, the vast majority remain undiagnosed and therefore untreated, despite the fact that this serious disorder can have significant consequences.
>
> Untreated, sleep apnea can cause high blood pressure and other cardiovascular disease, memory problems, weight gain, impotency, and headaches. Moreover, untreated sleep apnea may be responsible for job impairment and motor vehicle crashes.

*See* American Sleep Apnea Association Information *at* http://www.sleepapnea.org/info/index.html?gclid=CPCLhsG2uJQCFQcmIgodb3tCSw (last visited July 11, 2008).

The plaintiff's complaints about his treatment while he was a pretrial detainee technically fall under the Fourteenth Amendment, but they are analyzed by the same standards as his post-conviction Eighth Amendment claim. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001); *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001). As the magistrate judge correctly stated, to prove an Eighth Amendment claim alleging deliberate indifference to a prisoner's medical needs, the plaintiff must show a serious medical need and "that an official who actually knew of the serious medical need possessed 'a sufficiently culpable state of mind in denying medical care.'" *Perez v. Oakland County*, 466 F.3d 416, 424 (6th Cir. 2006) (quoting *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005)). This standard "contains both an objective component – whether the deprivation was sufficiently serious – and a subjective component – whether the prison official acted with a sufficiently culpable state of mind." *Bowman v. Corrections Corp. of America*, 350 F.3d 537, 544 (6th Cir. 2003).

As measured by the passage quoted above, the plaintiff overstates the seriousness of his sleep apnea condition. Although delay in repairing the breathing machine perhaps could cause serious consequences in some individuals, there is no suggestion that the plaintiff is one of them. It is more

likely that he falls within the majority of sleep apnea sufferers whose sleep interruption becomes a discomfort and an inconvenience. To satisfy the objective component of the deliberate indifference test, the plaintiff must allege that the medical need asserted is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[W]hile medical proof may be necessary to assess whether the denial of medical care caused a serious medical injury in cases where the prisoner['s] . . . 'affliction is seemingly minor or non-obvious,' no such evidence is required where the individual had a 'serious need for medical care that was so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Estate of Owensby v. City of Cincinnati*, 414 F.3d 596, 604 (6th Cir. 2005) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004)). Absent such an obvious, serious need, "'[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" *Napier*, 238 F.3d at 742 (quoting *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994)).

Judge Binder correctly observed that the plaintiff never alleged that dire results flowed from his cell mates' missteps or the orderlies' inadvertent disconnection of his breathing machine's power. Despite his repeated allegations as to what could happen if the machine were to malfunction, the plaintiff has not averred that his health was actually damaged as a result of any of the alleged incidents. The magistrate judge correctly found that he did not sufficiently allege the objective component of a deliberate indifference claim.

On the other hand, the Sixth Circuit has recognized hepatitis C sometimes is a sufficiently serious medical condition for purposes of deliberate indifference claims. *See, e.g. Owens v.*

*Hutchinson*, 79 Fed. Appx. 159 (6th Cir. 2003). However, it has also held that unless "facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent healthcare providers," "'an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" *Blackmore*, 390 F.3d at 898 (quoting *Napier*, 238 F.3d at 742). That requirement also applies to allegations of inadequate medical treatment. *Ibid.* Because the plaintiff has not alleged any obvious manifestations of a need for prompt medical care and admittedly did receive treatment for his hepatitis, his allegation speaks to the defendant's failure to adequately treat his condition in a timely manner. But he has not averred facts indicating that he was injured from the delay in treatment.

Judge Binder found that, the "[p]laintiff has failed to state how any lack of treatment has damaged his health other than an increased level of 'enzymes,'" and that "falls short of an allegation of injuries that require immediate medical attention." R & R at 7. The plaintiff appears to address this point in his objection by stating that a physician at Ashland Camp in Kentucky, where he was at some point transferred, informed him that he would suffer kidney failure within the next five years. However, he has not directly or inferentially alleged that this circumstance was a result of a delay in treatment for hepatitis, which is a liver ailment. He states that his "Hepatitis C [sic] was causing many critical symptoms which were attacking . . . his [l]iver and [k]idneys," Pl.'s obj. at 12, but again he does not articulate how those symptoms followed from the delay in treating his hepatitis. To be sure, the plaintiff included an allegation in his complaint that "upon arrival at his parent institution[s] [he was] informed by all medical staff . . . that his pains, illnesses, colds, abdomen . . . is consequences [sic] of hepatitis [sic]." *Id*. at 13 (internal quotation marks omitted).

Nonetheless, aside from the fact that the first time he made these allegations was in his objections, he still has not averred any link to the defendants' delay in treating him. Although the plaintiff claims that his condition has "worsened significantly" due to the defendants' "indifference," he has not articulated any specific harm flowing from the defendants' alleged refusal to treat him during his pre-trial detention or while he was awaiting transfer to another federal facility. Therefore, the plaintiff has failed to articulate an injury sufficiently serious to satisfy the objective component of a deliberate indifference claim.

Moreover, the plaintiff's complaint is lacking in allegations to satisfy the subjective component of the deliberate indifference test. To satisfy the subjective component, the plaintiff must show that "the prison official possessed 'a sufficiently culpable state of mind in denying medical care.'" *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005) (quoting *Blackmore*, 390 F.3d at 895). Although "it is not necessary that the prison officials consciously sought to inflict pain by withholding treatment," *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988), "[m]ere negligence is not sufficient," *Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993). Rather, the plaintiff must "show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). In other words, "[t]he official's conduct 'must demonstrate deliberateness tantamount to an intent to punish.'" *Hicks*, 992 F.2d at 1455 (quoting *Molton*, 839 F.2d at 243). This requirement "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

The Sixth Circuit has found that, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). The plaintiff was prescribed the use of the CPAP machine by Doctor Harvey, Defendant Malatinsky's predecessor. He was also seen by medical staff after the alleged incident on March 15, 2005, where the machine was temporarily rendered inoperable and he suffered from chest pains and "numbing of the left arm and left side of the neck." Pl.'s Aff. at ¶ 24. Although he complains about not receiving an MRI, CAT-scan, X-ray, or stress test as he had requested, he admits that staff took his blood pressure, oxygen level, weight, and temperature. Despite his contentions as to the severity of the danger posed by housing him with a cell mate, he admittedly received some treatment for the condition and thus has failed to allege that the defendants disregarded a substantial risk to his health. His complaint essentially is that the defendants did not do enough to address the dangers associated with his condition. This speaks to adequacy of treatment and would constitute at most an action for medical malpractice. It is not the province of the Court to second guess medical judgments for purposes of deliberate indifference claims. Thus, the plaintiff has failed to allege that the defendants possessed a sufficient level of culpability in denying his request to be housed alone.

Similarly, although the plaintiff did not receive the treatment he wanted for his hepatitis C, he admittedly received some treatment and was seen by a doctor for his condition. In his objection, he states that on June 1, 2006, he received a liver biopsy from defendant Malatinsky, which showed "liver disease where fibrosis is apparent." Pl.'s Obj. at 12. He complains that Malatinsky informed him that he could not receive treatment for the condition because he did not have cirrhosis damage.

*Id*. at 12. Because it appears Malatinsky performed a biopsy and determined the plaintiff's condition was not severe enough to receive the treatment he requested, the plaintiff's challenge involves a question of medical judgment, a matter that is not properly addressed by a deliberate indifference claim.

### III.

The Court agrees with the magistrate judge that the complaint and its amendments fail to state a claim. The Court also finds the petitioner's objections to the magistrate judge's recommendation have no merit.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt. #12] is **ADOPTED**, the plaintiff's objections to the recommendation [dkt #18] are **OVERRULED**, the case is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: July 14, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 14, 2008.

s/Felicia M. Moses  
FELICIA M. MOSES